**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

LAZARO QUINONES-CEDENO,    )
    )
       **Plaintiff,**    )
    )
v.    )    **Civil Action No. 1:19-00064**
    )
MS. BARBARA RICKARD, *et al.*,    )
    )
       **Defendants.**    )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 19), filed on March 29, 2019. Having examined Plaintiff's most recent Amended Complaint, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Plaintiff's Application to Proceed Without Prepayment of Fees be denied and this matter be dismissed.

## FACTUAL BACKGROUND

On January 25, 2019, the Court filed what it construed as a letter-form Complaint claiming entitlement to relief pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 1.) By Order entered on January 29, 2019, the undersigned directed Plaintiff to amend his Complaint to name "persons" as defendants, specifically setting forth his constitutional claims, and stating facts as to how each defendant violated his constitutional rights. (Document No. 3.)

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

On February 11, 2019, Plaintiff filed his letter-form Motion to Extend Time to Amend Complaint and letter-form Motion for Preliminary Injunction. (Document Nos. 4 and 5.) By Order entered the following day, the undersigned granted Plaintiff's Motion to Extend Time to Amend Complaint. (Document No. 7.) On February 14, 2019, Plaintiff's filed his second Motion for Extension of Time to file his Amended Complaint. (Document No. 8.) On February 25, 2019, the undersigned denied Plaintiff's second Motion for Extension of Time as moot based upon the granting of the letter-form Motion to Extend Time filed on February 11, 2019. (Document No. 9.) On February 25, 2019, Plaintiff filed his first Amended Complaint. (Document No. 10.) On February 28, 2019, Plaintiff filed his Motion for Extension of Time to file his Motion to Proceed Without Prepayment of Fees and Costs. (Document No. 11.) By Order entered on March 1, 2019, the undersigned granted Plaintiff's Motion for Extension of Time concerning the filing of his Motion to Proceed Without Prepayment of Fees. (Document No. 12.) On March 4, 2019 and March 6, 2019, Plaintiff filed documentation in support of his Amended Complaint. (Document Nos. 13 and 14.)

On March 29, 2019, Plaintiff filed his Motion to Proceed Without Prepayment of Fees and Costs and second Amended Complaint. (Document Nos. 19 and 20.) As Defendants in his second Amended Complaint, Plaintiff named the following: (1) Ms. Barbara Rickard, Warden; (2) Roldan Randan, SIS Lieutenant; (3) C. Moore, SIA; (4) Paul Munn, Captain; (5) J.A. Keller, S.E.R.O. Director, Atlanta, GA; (6) B.M. Antonelli, FCI Williamsburg Warden; and (7) M. Travis Bragg, FCI Bennettsville Warden. (Id.) Plaintiff indicated that the events concerning his second Amended Complaint took place at the following locations: (1) FCI Beaumont, Texas; (2) FCI Bennettsville, S.C.; (3) FIC Williamsburg, S.C.; and (4) FCI McDowell, WV. (Id.) By Order entered on April 1, 2019, the undersigned noted that upon screening the Court determined that

2

Plaintiff's second Amended Complaint was convoluted and difficult to comprehend. (Document No. 25.) Specifically, the undersigned noted that Plaintiff failed to identify at which location each Defendant's alleged misconduct occurred. (Id.) The undersigned further notified Plaintiff that to the extent Plaintiff was attempting to file an action concerning allegations that occurred at prisons located in Texas or South Carolina, Plaintiff should initiate an action concerning such allegations in the District Court having personal jurisdiction over those defendants. (Id.) The undersigned, therefore, ordered Plaintiff to again amend his Complaint to specifically set forth his constitutional claims and state specific facts as to how each defendant violated his constitutional rights. (Id.) Finally, the undersigned notified Plaintiff that the filing of an Amended Complaint would supersede the original letter-form Complaint and other Amended Complaints, and there must be one integrated document that will provide the defendants with notice of the claims and allegations against them. (Id.)

On April 11, 2019, Plaintiff filed an Addendum to his second Amended Complaint. (Document No. 26.) On May 2, 2019, Plaintiff filed his third Amended Complaint and an Addendum to his Amended Complaint. (Document Nos. 27 and 28.) In his third Amended Complaint, Plaintiff named the following as Defendants: (1) Ms. Barbara Rickard, Former Warden; (2) Roldan Randan, SIS Lieutenant; (3) C. Moore, SIA; (4) Paul Munn, Captain; (5) D. Martin, Lieutenant; (6) C. Barker, Foreman Cook; and (7) D. Mayle, SHU Lieutenant. (Document No. 27.) On May 8, 2019, Plaintiff filed a second Addendum to his third Amended Complaint. (Document No. 29.) By Order entered on May 9, 2019, the undersigned again directed Plaintiff to file an Amended Complaint including all of his claims. (Document No. 30.) The undersigned noted that Plaintiff had filed Addendums after the filing of his most recent Amended Complaint. (Id.) The undersigned again notified Plaintiff that his most recent Amended

3

Complaint would supersede the original letter-form Complaint and other Amended Complaints, and there must be one integrated document that will provide the defendants with notice of the claims and allegations against them. (Id.) On May 30, 2019, Plaintiff filed a third Addendum to his third Amended Complaint. (Document No. 31.) By Order entered on May 31, 2019, the undersigned directed Plaintiff to file an Amended Complaint including all of his claims. (Document No. 32.) The undersigned noted that Plaintiff continues to file Addendums to his Amended Complaint even though this Court has notified Plaintiff "multiple times that the Amended Complaint will **supersede** the original letter-form Complaint and other Amended Complaints, and there must be **one integrated document** that will provide the defendants with notice of the claims and allegations against them." (Id.) Despite Plaintiff's continuous failure to comply with the Court's above directions, the undersigned directed that Plaintiff be "allowed one final chance to comply with the Court's Orders." (Id.)

On June 14, 2019, Plaintiff filed his fourth Amended Complaint and two Addendums. (Document Nos. 33 and 33-1.) In his fourth Amended Complaint, Plaintiff named the following as Defendants: (1) Ms. Barbara Rickard, Warden; (2) Roldan Randan, SIS Lieutenant; (3) C. Moore, SIA; (4) K. Rich, Associate Warden; (5) C. Barker, Foreman Cook; (6) D. Mayle, SHU Lieutenant; and (7) D. Martin, Lieutenant. (Document No. 33.) Plaintiff indicates that the events concerning his Complaint occurred at FCI Bennettsville and FCI Williamburg, which are located in South Carolina. (Id., p. 3.) Plaintiff then states that FCI McDowell staff are "covering" for these facilities. (Id.) In his fourth Amended Complaint and Addendums, Plaintiff appears to explain that he was required to file Addendums due to a delay in receiving the Court's Order directing the filing of an Amended Complaint. (Document Nos. 33 and 33-1.) Plaintiff explains that by the time he received the Court's Order setting forth a deadline for the filing of an

Amended Complaint, Plaintiff had only a few days left to file his Amended Complaint.[2] (Id.)

First, Plaintiff alleges that Defendants Rickard and Randan violated his Fifth Amendment rights

by failing to deliver the administrative remedy rejection notices in a timely manner. (Id., p. 5.)

Second, Plaintiff alleges that Defendant Moore "is keeping me held hostage in the Special

Housing Unit ["SHU"] since December 20, 2018, in retaliation for [his] filing of grievances and

this civil action." (Id.) Third, Plaintiff alleges that Defendants Moore, Rich, Mayle, Martin,

Barker, Looney, Hurd, and Handley are retaliating against him. (Id.) Plaintiff states that the "First

Amendment prohibits jail officials from retaliating against inmates who report complaints, file

grievance, or file lawsuits." (Id.) As relief, Plaintiff requests that he be released from SHU, his

good time credit restored, and monetary damages. (Document No. 33, p. 8.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a

person seeks redress from a governmental entity or officer or employee of a governmental entity.

On screening, the Court must recommend dismissal of the case if the complaint is frivolous,

malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is

one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S.

25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either

---

[2] The undersigned notes that Plaintiff could have filed a Motion for Extension of Time based upon such circumstances, but Plaintiff continuously failed to do so. Instead, Plaintiff filed his Amended Complaint and numerous Addendums. The record further reveals that Plaintiff had requested a prior extension of time concerning his first Amendment Complaint. Thus, Plaintiff was clearly aware that extensions of time would be granted upon proper circumstances. To the extent Plaintiff is complaining of a delay in receiving his incoming mail, the undersigned finds that such does not generally constitute a constitutional violation. Prisons have a legitimate interest in screening incoming mail for contraband. Due to the large volume of incoming mail, some delay in receiving incoming mail is to be expected. As stated above, such a delay would have been proper circumstances for the granting of a motion for extension of time concerning

in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." <u>Id.</u>, 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." <u>Id.</u>, 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." <u>Miller v. Jack</u>, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may

---

Plaintiff's legal filings, but Plaintiff choose to forego filing such a Motion.

not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

1. **Administrative Remedy Process:**

In his fourth Amended Complaint and Addendums, Plaintiff appears to allege that Defendants have violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable or futile. (Document Nos. 33 and 33-1).) Plaintiff contends that the administrative remedy process is rendered unavailable or futile due to Defendants' alleged delay in providing Plaintiff with his mail, which includes response to his administrative remedies. (Id.) Plaintiff explains that delays in receiving his mail prevents him from timely proceeding with the administrative remedies process.[3] (Id.)

Federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When

---

[3] The undersigned notes that the BOP administrative remedy process provides that inmates may seek an extension of time "[w]hen the inmate demonstrates a valid reason for delay." *See* 28 C.F.R. §§ 542.14(b) and 542.15(a). To the extent Plaintiff is alleging that he is not receiving timely responses to his administrative remedies, Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Accordingly, the undersigned finds that Plaintiff's claim that Defendants violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable or futile should be dismissed.

2.    **Eighth Amendment**:

Liberally construing Plaintiff's fourth Amended Complaint and Addendums, the undersigned views it as setting forth a claim under the Eighth Amendment. (Document Nos. 33 and 33-1.) As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to

reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental

9

injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

Plaintiff appears to contend that Defendants are violating his constitutional rights by verbally harassing him. (Document Nos. 33 and 33-1.) Plaintiff, however, fails to set forth any facts supporting such a claim. Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. First, Plaintiff fails to allege facts supporting that he is incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff conclusory claim that he is in "imminent danger of serious physical injury" is insufficient. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendants' alleged verbal abuse or harassment. The verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

10

3.    <u>**No Due Process Violation**</u>:

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting <u>Roth</u>, 408 U.S. at 577, 92 S.Ct. 2709). In <u>Gaston</u>, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." <u>Id.</u> at 343. The Supreme Court held in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. <u>Id.</u>, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. <u>Id.</u>

Applying the principles set forth in <u>Sandin</u>, the undersigned finds Plaintiff's placement in segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for his placement in segregation, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were

atypical or resulted in a significant hardship.[4] Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), overruled in part by Sandin, 515 U.S. 482-83, 115 S.Ct. 2293; Meachum v. Farno, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest); and Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994)(citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976))(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. Accordingly,

---

[4] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

the undersigned finds that Plaintiff's claim is without merit.[5]

**4.    Retaliation Claim:**

Finally, the undersigned will consider Plaintiff's claim that Defendants have violated his First Amendment rights by retaliating against him. (Document Nos. 33 and 33-1.) A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to

---

[5] To the extent Plaintiff wishes to allege that his due process rights were violated during disciplinary proceedings resulting in a loss of good time credit, Plaintiff should file a Section 2241 Petition. See Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)( The Supreme Court applied the Heck rule to prison disciplinary proceedings holding that, in the context of prison disciplinary hearings that result in the loss of good-time credits, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in habeas corpus, not in a Section 1983 action.) In his letter-form Motion for a Temporary Restraining Order, Plaintiff indicates that an Incident Report was filed against him for threatening staff in violation of Prohibited Code 203. (Document No. 5.) Plaintiff acknowledges that a DOH Hearing was conducted on January 8, 2019, and "threatening staff Code 203 was

13

extend <u>Bivens</u> liability to any new context or new category of defendants. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend <u>Bivens</u> to permit suit against a federal agency); <u>Holly v. Scott</u>, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend <u>Bivens</u> to an Eighth Amendment claim against employees of a privately operated prison); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012)(declining to extend <u>Bivens</u> in a military context). Recently, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity." <u>Ziglar v. Abbasi</u>, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted <u>Bivens</u> claim is not one of the three <u>Bivens</u>-type actions previously recognized by the Supreme Court, closer scrutiny is required. <u>Id.</u>

In <u>Abbasi</u>, the Supreme Court set out a framework for determining whether a claim presents a "new <u>Bivens</u> context." <u>Abbasi</u>, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a <u>Bivens</u> remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. <u>Id.</u> at 1854-55(citations omitted). The <u>Abbasi</u> Court explained that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." <u>Id.</u> at 1859. Although the <u>Abbasi</u> Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

A case might differ in a meaningful way because of the rank of the officers

---

dropped as meritless and I as found incorrectly guilty of insolent Code 312." (*Id.*)

involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In the instant case, Plaintiff alleges that Defendants retaliated against him for submitting administrative remedies in violation of his First Amendment rights. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim. Thus, the undersigned must first determine whether Plaintiff's retaliation claim presents "a new Bivens context."

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); also see Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); Leibelson v. Collins, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that *Bivens* may be extended to First Amendment claims."). In Ashcroft v. Iqbal, the Supreme Court stressed that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948. The Iqbal Court, however, noted that it assumed without deciding that respondent's First Amendment claim was actionable under Bivens because petitioners did not assert the above argument. Id.; also see Wood v. Moss, ___ U.S. ___, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039

(2014)("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. We do so again in this case.") The undersigned further acknowledges that the just prior to the Supreme Court's decision in <u>Abbasi</u>, the Fourth Circuit clarified that inmates have a clearly established First Amendment right to file prison grievances free from retaliation. <u>See</u> <u>Martin v. Duffy</u>, 858 F.3d 239 (4th Cir. June 1, 2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation was clearly established under the First Amendment' at least as far back in time as 2010")(citing <u>Booker v. South Carolina Department of Corrections</u>, 855 F.3d 533, 545 (4th Cir. April 28, 2017)). Importantly, both <u>Martin</u> and <u>Booker</u> were Section 1983 actions and the issue of whether <u>Bivens</u> extends to the First Amendment was not addressed by the Fourth Circuit. <u>Id.</u> Subsequently, the Fourth Circuit issued an unpublished opinion in <u>Patton v. Kimble</u> reversing a district court's dismissal of an inmate's <u>Bivens</u> action alleging a First Amendment retaliation claim. <u>Patton v. Kimble</u>, 717 Fed.Appx. 271 (4th Cir. 2018). The Fourth Court determined that the district court erred in finding that the inmate failed to state a First Amendment retaliation claim in light of its decision in <u>Booker</u>. <u>Id.</u> at 271-72. The Fourth Circuit, however, did not address the issue of whether <u>Bivens</u> extends to the First Amendment. <u>Id.</u> Based upon the foregoing, the undersigned find that that Plaintiff's First Amendment retaliation claim presents a new <u>Bivens</u> context.

Next, the Court must determine whether <u>Bivens</u> should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." <u>Wilkie</u>, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." <u>Abbasi</u>, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone

may limit the power of the Judiciary to infer a new *Bivens* cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. First, the undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Second, to the extent Plaintiff alleges that retaliation resulted in the filing of false incident reports, Plaintiff could have sought review of such incident reports pursuant to 28 C.F.R. § 541.7(i). Third, any retaliation that may have resulted in an extension of Plaintiff's confinement (such as disciplinary action resulting in the loss of good time credit) would be actionable in *habeas corpus* pursuant to 28 U.S.C. 2241. Thus, the undersigned finds that Plaintiff has alternative remedies available to address his allegations of retaliation. See Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018)(finding the inmate had alternative remedies available to address his First Amendment retaliation claim via the BOP's administrative remedy process, review of the incident report pursuant to Section 541.7, and under state law); Reid v. United States, 2018 WL 1588264, * 2 (E.D.Cal. April 2, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, under the Federal Tort Claims Act, a Section 2241 petition for writ of *habeas corpus*, and Bivens to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens); Muhammad v. Gehrke, 2018 WL 1334936, * 4 (S.D.Ind. March 15, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, *habeas corpus*, and Bivens to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be

actionable under Bivens); Gonzalez v. Hasty, 269 F.Supp.3d 45, 60 (E.D.N.Y. Sept. 18, 2017)(finding that inmate had two alternative remedies, the filing of administrative complaints and a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241); Andrews v. Miner, 2017 WL 7688266, * 4 (N.D.Ala. Aug. 25, 2017)(finding that the inmate had alternative remedies via the filing of a Bivens claim for excessive force, the BOP's administrative remedy process, and under the Federal Tort Claims Act).

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct. 1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865. The Abassi Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." Id. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

18

Id. The PLRA's exhaustion requirement clearly applies to Bivens actions. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's First Amendment retaliation claim. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on

Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Wilkie, 551 U.S. at 562, 127 S.Ct. 2588(quoting Bush, 462 U.S at 389, 103 S.Ct. 2404). In Abbasi, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

Abbasi, 137 U.S. at 1856. The undersigned notes that expanding Bivens to allow a First Amendment retaliation claim by inmates would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. A First Amendment retaliation claim requires an inquiry into a defendant's subjective state of mind, which often results in an issue of material fact that cannot be resolved at the dispositive motion stage. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(en banc)(citations omitted)(An inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."). The consequence of the existence of an issue of material fact is the need for a trial, which results in further litigation costs to the Government. See Gonzalez v. Bendet, 2018 WL 1524752, * 4 (S.D.S.D. March 28, 2018)(finding "that the cost, time, and energy associated with defending a

*Bivens* action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant" and constitute a special factor counselling hesitation); Andrews, 2017 WL 7688266, * 4 – 5(same). Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of Bivens to a First Amendment retaliation claim. Based upon the foregoing, the undersigned respectfully recommends that the District Court dismiss Plaintiff's First Amendment retaliation claim.

**5.**    **Plaintiff's Motion for Temporary Restraining Order and Injunctive Relief:**

In his letter-form Motion for Preliminary Injunction, Plaintiff appears to request that Defendants be required to release him from segregation. (Document No. 5.) Plaintiff contends that he is being held "hostage" due to false disciplinary charges. (Id.) Plaintiff further requests that this Court "stop any retaliatory prison transfer." (Id.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." The Real Truth About Obama, Inc. v. Federal Election Commission., 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[6] The Fourth Circuit has explains that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." Id. Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer,

---

[6] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc.*

22

2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

For the reasons fully explained above, the undersigned has recommended that Plaintiff's Amended Complaint and Addendums be dismissed as to all Defendants. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 19) and letter-form Motion for Preliminary Injunction (Document No. 5), **DISMISS** Plaintiff's Amended Complaint (Document Nos. 33 and 33-1), and remove this matter from the Court's docket.

---

*v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: June 26, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

24